United States Court of Appeals,
Eleventh Circuit.

No. 96-2636.

JACOB MAXWELL, INCORPORATED, Plaintiff-Counter-Defendant-Appellant, Cross-Appellee,

v.

Michael VEECK, Individually and as General Partner of the Fort Myers Miracle Baseball Club Partnership, et al., Defendants,

John Kuhn, Movant,

Marvin Goldclang, Individually and as General Partner of the Fort Myers Miracle Baseball Club Partnership, Greater Miami Baseball Club Limited Partnership, Defendants-Appellees, Cross-Appellants,

Baseball Company of America, a Florida Limited Partnership, Baseball Corp. of America, Inc., a New Jersey Corporation, Defendants-Counter-Claimants-Appellees, Cross-Appellants.

April 18, 1997.

Appeal from the United States District Court for the Middle District of Florida. (No. 93-372-CIV-FTM-24D), Susan C. Bucklew, Judge.

Before CARNES, Circuit Judge, CAMPBELL[*] and CLARK, Senior Circuit Judges.

LEVIN H. CAMPBELL, Senior Circuit Judge:

This appeal concerns an unhappy dispute between the composer of a song entitled "Cheer!  The Miracle Is Here" and a minor league baseball team, known as the Miracle, for whose promotion the song was written.  After the parties' relations turned sour, the composer sued the Miracle claiming that its playing of the song at games had been a breach of copyright.  Rejecting that contention, the district court awarded summary judgment to the Miracle and ruled that the Miracle had received an oral nonexclusive license

---

[*]Honorable Levin H. Campbell, Senior U.S. Circuit Judge for the First Circuit, sitting by designation.

authorizing the use that it made of the copyrighted song, and that the composer's remedy, if any, lay in a state court contract action for payment and damages. The composer has appealed, and the Miracle has cross-appealed from the district court's denial of its request for attorney's fees.

I.

We state the facts in the light most favorable to the non-moving party, Plaintiff-Appellant Jacob-Maxwell, Inc. ("JMI").

In the spring of 1993, James Albion, president of JMI, agreed to write a team song for the Miracle, a minor league baseball team. Albion agreed to write the song free of charge, to provide the Miracle with the Digital Audio Tape master, and to grant the Miracle an exclusive license. In return, Albion asked only that the Miracle pay his out-of-pocket production costs and that the team credit him as the author any time the song was played at games or distributed on cassette tapes. Albion told Michael Veeck, the Miracle's Executive Director, that his production costs would be somewhere between $800 and $1100.

Albion wrote and produced the song, incurring production expenses of $1050, and assigned ownership rights to JMI. He delivered a master tape (though not the Digital Audio Tape master) to John Kuhn, the Miracle's Director of Marketing and Promotion, on July 2, 1993, and requested payment. Kuhn told him he could not issue a check immediately but asked if he could play the song at the next day's game regardless. Albion agreed.

Over the course of the summer, the Miracle played the song many times at games, never giving Albion the promised authorship

credit.   Albion was present at many of these games.   Albion repeatedly demanded payment, and once communicated his expectation that the lyrics and credits would be handed out to the fans, but did not withdraw his permission to play the song at games.   To the contrary, in July 1993, Albion wrote to Kuhn urging the Miracle to continue to perform the song publicly.

On August 9, Albion provided the Miracle with a written invoice.   On August 30, the Miracle tendered Albion a check for $500, telling him the rest would be handled later.   Because the check was not marked "partial payment," Albion refused to accept it.   On September 21, 1993, JMI formally registered the song with the United States Copyright Office, and on October 12th JMI's attorney wrote to the Miracle, notifying the team that its use of the song constituted copyright infringement.   The team last played the song on August 27, 1993.

JMI sued the owners and operators of the Miracle Baseball Club of Ft. Myers, Florida, alleging copyright infringement and breach of contract.   The district court granted the defendants' motion for summary judgment on the copyright claim, holding that Albion had, by his conduct, granted the Miracle a nonexclusive license to play the song at the times it did.   The court dismissed the pendent state law breach of contract claim without prejudice.[1]

II.

On appeal, JMI argues that because the oral agreement had been for an exclusive license, the district court erred in finding

---

[1]The defendants' state law counterclaim was likewise dismissed without prejudice.

an implied nonexclusive license.

The Copyright Act provides, "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a). It is undisputed that any arrangement between the parties for granting an exclusive license to the Miracle was never written down and that, therefore, no valid transfer to the team of copyright ownership under the Copyright Act took place.

In contrast to an exclusive license, a nonexclusive license to use a copyright " "may be granted orally, or may even be implied from conduct.' " *Effects Associates, Inc. v. Cohen,* 908 F.2d 555, 558 (9th Cir.1990) (quoting 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 10.03[A], at 10-36 (1989)), *cert. denied sub nom. Danforth v. Cohen,* 498 U.S. 1103, 111 S.Ct. 1003, 112 L.Ed.2d 1086 (1991). This is true because 17 U.S.C. § 101 excludes the assignment of nonexclusive licenses from the definition of "transfer of copyright ownership."

The district court, relying on the Ninth Circuit's decision in *Effects Associates,* determined that Albion had impliedly granted the Miracle a nonexclusive license by initially giving permission to play the song at games and by failing to object despite his knowledge that the team was continuing to play the song publicly. In *Effects Associates,* the Ninth Circuit held that a special effects company had granted a movie producer an implied nonexclusive license to use the special effects footage it had

created.  The court reasoned that because the special effects company had "created a work at defendant's request and handed it over, intending that defendant copy and distribute it," it had impliedly granted the defendant a nonexclusive license.  *Id.*

Similarly, in this case Albion created the song at the Miracle's request and handed a master tape over, intending that the Miracle play the song at its games.  But, JMI sees an important distinction between this case and *Effects Associates.*  There, "no one said anything about who would own the copyright in the footage," *id.* at 556, but here the plaintiff orally indicated an intention to grant to the defendant an exclusive license.

JMI argues that under Florida contract law,[2] it was error for the court to infer the creation of a *nonexclusive* license from the parties' conduct when they had explicitly agreed, albeit in an unenforceable oral exchange, to an *exclusive* license.  *See Excelsior Insurance Company v. Pomona Park Bar & Package Store,* 369 So.2d 938, 942 (Fla.1979) (holding that courts may not "rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties");  *Rigel v. National Casualty Company,* 76 So.2d 285, 286 (Fla.1954) (holding that courts should not add a meaning to clear contract language); *Indian Harbor Citrus, Inc. v. Poppell,* 658 So.2d 605, 606 (Fla. 4th Dist.Ct.App.) (holding that custom or usage cannot be used to

---

[2]As a general rule, state law governs the interpretation of copyright contracts, unless a particular state rule of construction would "so alter rights granted by the copyright statutes as to invade the scope of copyright law or violate its policies." *Fantastic Fakes, Inc. v. Pickwick International, Inc.,* 661 F.2d 479, 483 (5th Cir.1981).  *See also* 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 12.01[A], at 12-8 n. 19 (1996).

contradict an express contract), *review denied,* 666 So.2d 144 (Fla.1995); *Flagship National Bank v. Gray Distribution Systems, Inc.,* 485 So.2d 1336, 1340 (Fla. 3d Dist.Ct.App.1986) (holding that when the express terms of a contract conflict with the practice of the parties, the express terms of the contract control), *review denied,* 497 So.2d 1217 (Fla.1986).

We do not find these cases controlling here. They either involve situations where parties seek to modify fully enforceable contracts by reference to the rule of interpretation which holds that an ambiguity in a contract is to be construed against the drafter or deal with attempts by a party to modify a clear contract term by reference to the parties' course of dealings or other extrinsic matters. This case does not present an analogous situation. Here federal copyright law renders the parties' oral agreement unenforceable insofar as it provided for the transfer of an exclusive copyright. In these circumstances, a court has no choice but to look at alternatives beyond the parties' intended arrangement.

Like the district court, we conclude that while it may well be that the parties in their initial negotiations contemplated an exclusive license, JMI cannot reasonably deny, given its subsequent conduct here, that it granted to the Miracle the sort of lesser, nonexclusive license to play the piece during the summer of 1993 that federal law recognizes may result from a purely oral transaction.

Albion's approving conduct—his granting of permission to the Miracle on July 2, 1993 to play his song at the next day's game

even though he had not yet been paid, his attendance without demur at subsequent games at which the song was played, his letter to Kuhn urging the Miracle to continue to play the song at games, and his failure to withdraw permission until October—clearly expressed Albion's permission for the Miracle to play the song when it did. Implicit in that permission was a promise not to sue for copyright infringement—a promise that at least one court has found to be the essence of a nonexclusive license. *See In re CFLC, Inc.,* 89 F.3d 673, 677 (9th Cir.1996) ("[A] nonexclusive patent license is, in essence, "a mere waiver of the right to sue' the licensee for infringement.") (quoting *De Forest Radio Telephone & Telegraph Co. v. United States,* 273 U.S. 236, 242, 47 S.Ct. 366, 368, 71 L.Ed. 625 (1927)). We think it follows that until permission was withdrawn in October, JMI granted to the Miracle a nonexclusive license to play the song at games.

In so saying, we do not suggest that Albion and JMI waived their rights to be compensated by the Miracle in accordance with their oral understanding. What they waived was any right to sue for breach of copyright on account of the playing of the song while the license was in effect. As discussed in the following section, the Miracle's failure to provide the agreed quid pro quo could not, on the facts of this case, invalidate the legal effect of Albion's permission to play.

## III.

JMI argues that even assuming it gave the Miracle an oral, nonexclusive license to play the song, that right should be treated as having been cancelled in its entirety by the Miracle's material

breach of their oral understanding when it failed both to reimburse JMI's costs and publicly to acknowledge Albion at games as the song's creator. But even assuming arguendo that the Miracle's conduct constituted a material breach of the parties' oral understanding, this fact alone would not render the Miracle's playing of the song pursuant to JMI's permission a violation of JMI's copyright. Such a breach would do no more than *entitle* JMI to rescind the agreement and revoke its permission to play the song in the future, actions it did not take during the relevant period. One party's breach does not automatically cause recision of a bilateral contract. *See Fosson v. Palace (Waterland), Ltd.,* 78 F.3d 1448, 1455 (9th Cir.1996) (recognizing "the rule applied in other circuits that once a non-breaching party to an express copyright license obtains *and exercises* a right of rescission by virtue of a material breach of the agreement, any further distribution of the copyrighted material would constitute infringement") (emphasis added); *Hyman v. Cohen,* 73 So.2d 393, 397 (Fla.1954) (" "A material breach, as where the breach goes to the whole consideration of the contract, gives to the injured party the *right* to rescind the contract or to treat it as a breach of the entire contract....' ") (quoting 12 Am.Jur. *Contracts* § 389) (emphasis added); 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 10.15[A], at 10-125-126 (1996) ("*Upon such rescission,* the assignment or license is terminated and the copyright proprietor may hold his former grantee liable as an infringer for *subsequent* use of the work.") (emphasis added).

Since Albion on July 2, 1993 expressly gave his permission to

the Miracle to play his song at the next game, renewed this permission by letter that same month, and did not thereafter withdraw permission until some time after the Miracle had last played the song publicly, the Miracle never played the song without permission and is not liable for copyright infringement.

This is not a case where payment of JMI's costs and public recognition of authorship were made conditions precedent to the granted right to play. *See Restatement (Second) of Contracts* § 225 (1981). In such a case, absent performance of the conditions, the "license" would not have issued and the Miracle's public performances of the song would have violated JMI's copyright. *See Fantastic Fakes,* 661 F.2d at 483; 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 10.15[A], at 10-121 (1996).

But Albion did not make payment and recognition conditions precedent to the permission he gave to play the song. "A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." *Restatement (Second) of Contracts* § 224 (1981). "Conditions precedent are disfavored and will not be read into a contract unless required by plain, unambiguous language." *Effects Associates,* 908 F.2d at 559 n. 7. On July 2, 1993, JMI, through its president, Albion, expressly granted the Miracle permission to play the song before payment was tendered or recognition received. Thereafter, Albion did not withdraw permission although he attended many games and heard the song played, still without payment or recognition, on various occasions. Indeed, he wrote to Kuhn encouraging the Miracle to continue to play the song. Under these

circumstances, we cannot say that JMI's permission to play was conditioned on prior payment and public recognition.

IV.

While for the above reasons, JMI cannot recover breach of copyright damages from the Miracle for the latter's playing of the song, this does not end the matter.

JMI asserts that the Miracle made and broke its promise to pay JMI's expenses and to give public recognition and credit to the song's composer. While payment and recognition were not conditions precedent to playing the song, the district court recognized that JMI may be entitled to recover in a state action its damages from the Miracle's failure to perform these promises. Nothing herein is intended to suggest that the Miracle's treatment of JMI and Albion was either legally correct or such as to shield them from liability for their conduct. The only issue before the district court was JMI's right to recover under federal law for copyright infringement.

V.

In its cross-appeal, the Miracle contends that the district court abused its discretion in declining to award it attorney's fees under 17 U.S.C. § 505. That section states, in relevant part, "Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." Under this statute, attorney's fees are at the court's discretion. *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534, 114 S.Ct. 1023, 1033, 127 L.Ed.2d 455 (1994).

The Supreme Court has provided a nonexclusive list of factors

which district courts may take into account when determining whether or not to award a prevailing party attorney's fees under § 505. "These factors include "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.' " *Id.* (quoting *Lieb v. Topstone Industries, Inc.,* 788 F.2d 151, 156 (3d Cir.1986)). After considering these factors, we are unable to say that the district court abused its discretion in refusing to award attorney's fees.

AFFIRMED.