[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
08/05/99
THOMAS K. KAHN
CLERK

———————————————

No. 97-5064

———————————————

D.C. Docket No. 96-648-CV-SM

MIMI KORMAN,

Plaintiff-Appellant,

versus

HBC FLORIDA, INC.,

Defendant-Appellee.

———————————————

Appeal from the United States District Court
for the Southern District of Florida

———————————————

(August 5, 1999)

Before TJOFLAT, BLACK and CARNES, Circuit Judges.

CARNES, Circuit Judge:

Mimi Korman sued HBC Florida, Inc. ("HBC") for copyright infringement. The basis of her complaint was that WQBA-AM ("WQBA"), a radio station owned by HBC, continued to play one of the jingles she had written for it during their business relationship, even after that relationship ended and she insisted that the station stop. The district court granted HBC's motion for summary judgment on the basis of its holdings that: (1) Korman had granted the radio station a nonexclusive license to use the jingle; (2) 17 U.S.C. § 203, which governs the termination of exclusive and nonexclusive licenses to use copyrighted material, applies to implied nonexclusive licenses; and (3) 17 U.S.C. § 203(a)(3), which allows an author to terminate the grant of a license after 35 years, prevents the termination of licenses of indefinite duration until 35 years have elapsed, regardless of state law. We agree with the first two holdings, but not the third. We therefore reverse the district court's judgment and remand the case for further consideration.

## I. FACTS AND PROCEDURAL HISTORY

During the 1970s, Mimi Korman wrote and produced a number of jingles for WQBA, even though she and the station never had any written agreement. In 1978, Korman wrote the lyrics for a jingle entitled "Yo Llevo a Cuba La Voz,"

2

which translates as "I Convey the Voice to Cuba." WQBA liked the jingle enough to use it as a station identifier, and it did so with her permission, at least at the time. Neither party remembers how much WQBA paid Korman for this jingle, but they have stipulated that "WQBA paid Korman a fee for her work in writing the lyrics to the Jingle. No royalties or residuals were ever paid to Korman for the Jingle."

In 1979, Korman terminated her relationship with WQBA. Korman argues to us that she told WQBA, either at the beginning of their relationship or during its existence, that the license she was granting it to use her jingles would terminate when she ended her relationship with the station. However, her attorney conceded to the district court that there is no evidence indicating any understanding about the duration of the implied license. We hold her to that concession.

In 1993, Korman heard WQBA playing "Yo Llevo a Cuba La Voz," and left a message for its general manager, saying that the jingle was her property and the station should stop using the jingle unless it was willing to negotiate with her. She never heard from the station. Thereafter, she applied for and received a certificate of copyright registration for the jingle.

In May 1995, Korman again heard the jingle being played by WQBA, and she wrote the station a letter. In her letter, Korman referred to the copyright certificate she had obtained for the jingle, accused the station of violating her

3

copyright in the jingle, and offered to negotiate about the use of that and other jingles, which she had written "on a freelance basis" during her previous relationship with the station. Despite Korman's letter, WQBA continued to play the jingle even though no agreement was reached between the station and Korman. Korman then sued HBC, WQBA's current owner, for copyright infringement.

The district court granted HBC's motion for summary judgment, holding that Korman had granted WQBA a nonexclusive license to use the jingle, and that 17 U.S.C. § 203 prevented her from terminating the license until 35 years had elapsed.

## II. DISCUSSION

We review a grant of summary judgment de novo, applying the same standard as the district court. See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998). "Summary judgment is appropriate if the record shows no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. When deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." Witter v. Delta Air Lines, Inc., 138 F.3d 1366, 1369 (11th Cir. 1998) (quotation and citation omitted).

### A. DID KORMAN GRANT WQBA A NONEXCLUSIVE LICENSE?

Initially, Korman challenges the district court's holding that she granted WQBA a nonexclusive license to use the jingle.[1] We reject that challenge. While an exclusive license to use copyrighted material must be written, a nonexclusive license can be granted orally or can be implied from the conduct of the parties. See 17 U.S.C. § 204; Jacob Maxwell, Inc. v. Veeck, 110 F.3d 749, 751-52 (11th Cir. 1997). HBC does not contend that Korman orally gave it an explicit license to use the jingle; HBC argues instead that Korman's conduct gave it an implied license.

In Jacob Maxwell, a song had been written for the Miracle, a minor league baseball team. We concluded that an implied, nonexclusive license had been granted because the owner of the copyright, JMI, had allowed the Miracle to play the song at its games. See id. at 752-53. We explained: "JMI cannot reasonably deny, given its subsequent conduct here, that it granted to the Miracle the sort of lesser, nonexclusive license to play the piece during the summer of 1993 that federal law recognizes may result from a purely oral transaction." Id. at 753.

As in Jacob Maxwell, the conduct of the parties in this case establishes that a nonexclusive license was granted. Korman wrote jingles for WQBA for seven years, and during that time she allowed the station to air those jingles, including the

---

[1] The district court assumed that Korman possessed a valid copyright. Without conceding the issue, HBC made the same assumption in its brief to us, and we, too, will assume for present purposes that Korman has a valid copyright in the jingle.

one at issue in this case. Given that conduct, she "cannot reasonably deny" that she granted WQBA a nonexclusive license to use her jingle.


## B. DOES 17 U.S.C. § 203 PREVENT KORMAN FROM TERMINATING THE LICENSE?

After determining that Korman had granted a nonexclusive license to WQBA, the district court decided she could not terminate the license. The court based its decision on two premises: (1) the implied license came within the scope of 17 U.S.C. § 203, the termination provision of the Copyright Act; and (2) section 203 prevented Korman from terminating the license for 35 years. We agree with the first premise, but not the second.

### 1. Does 17 U.S.C. § 203 Apply to Implied Nonexclusive Licenses?

17 U.S.C. § 203 applies to "the exclusive or nonexclusive grant of a transfer or license of copyright . . . executed by the author on or after January 1, 1978 . . . ." 17 U.S.C. § 203(a).[2] As we have already determined, this case involves a

---

[2] The relevant part of 17 U.S.C. § 203(a) states:

[T]he exclusive or nonexclusive grant of a transfer or license of copyright or of any right under a copyright, executed by the author on or after January 1, 1978, otherwise than by will, is subject to termination under the following conditions: . . .

(3) Termination of the grant may be effected at any time during a period of five years beginning at the end of thirty-five years from the date of execution of the grant; . . .

6

nonexclusive grant of a license.  The plain language of section 203 covers all nonexclusive grants of a license that are executed after the specified date, and nothing in the statute excludes those that are  implied.

Korman argues that section 203 does not apply to implied licenses because they are not "executed," as required by that provision.  They are not executed, she says, because they are not in writing.  As a basis for her contention that licenses must be in writing in order to be executed, she points to 17 U.S.C.  § 204, which states that one of the requirements for a valid transfer of copyright ownership is that the transfer be written.  See 17 U.S.C. § 204(a).  Korman's reliance on section 204 is misplaced, because that provision applies only to transfers of copyright ownership; it has no application to nonexclusive licenses, which do not transfer ownership.  See Bateman v. Mnemonics, Inc., 79 F.3d 1532, 1537 n.12 (11th Cir. 1996) (noting that Copyright Act's definition of "transfer of copyright ownership" excludes nonexclusive licenses).

The existence of a writing requirement in section 204 cuts against Korman's position that section 203 only applies to written licenses, because it shows that Congress knows how to impose such a  requirement when it wants to do so.

_____

(5) Termination of the grant may be effected notwithstanding any agreement to the contrary, including an agreement to make a will or to make any future grant.

Congress did not do so in section 203. "Executed" means "carried into full effect," see Black's Law Dictionary 567 (6th ed. 1990), and nothing in section 203 or elsewhere in the Copyright Act requires that nonexclusive licenses be in writing before they can be carried into full effect.

The nonexclusive license involved in this case went into effect when Korman permitted WQBA to use the jingle notwithstanding the absence of a writing. She did that after January 1, 1978, the date of applicability set out in section 203, so that section does apply to this license. With that holding of the district court we are in full agreement.

2. Where No Termination Date Has Been Specified, Does 17 U.S.C. § 203 Prevent Termination of a License Before 35 Years Have Elapsed?

The holding with which we disagree concerns the applicability of section 203 to the grant of a license like the one in this case. The district court held that, unless the parties agree to a shorter duration, section 203 imposes a minimum term of 35 years for copyright licenses. After finding that Korman and WQBA had not agreed to a shorter duration,[3] the district court held that section 203 prevented Korman from terminating the license until 35 years had passed. The issue of

---

[3] Korman now contends the parties agreed that the grant of the license was to be limited to the duration of her employment at WQBA. However, in the district court her attorney conceded there is no evidence to support that contention, and the court accepted and relied upon that concession. She is bound by her attorney's concession.

8

whether section 203 imposes a minimum term of 35 years on licenses of indefinite duration has caused a split among the other circuits. Compare Walthal v. Rusk, 172 F.3d 481, 484-85 (7th Cir. 1999) (section 203 does not create a minimum term of 35 years for licenses of indefinite duration), with Rano v. Sipa Press, Inc., 987 F.2d 580, 585 (9th Cir. 1993) (section 203 does create a minimum term of 35 years for licenses of indefinite duration). After reviewing the text and legislative history of section 203 and considering the views of the other circuits, we conclude that section 203 does not create a minimum term for licenses of indefinite duration.

Section 203 provides: "Termination of the grant [of a transfer or license] may be effected at any time during a period of five years beginning at the end of thirty-five years from the date of execution of the grant." 17 U.S.C. § 203(a)(3). The plain language of this provision gives the author of a work the right to terminate any copyright transfer or license still in effect after 35 years, provided she exercises that right after 35 and before 40 years have elapsed. See Walthal, 172 F.3d at 484; Rano, 987 F.2d at 585; see also 17 U.S.C. § 203(a)(5) ("Termination of the grant may be effected notwithstanding any agreement to the contrary . . . ."). But the issue before us is not about what happens during that five-year period, which begins after 35 years. Instead, the issue is about what happens, or what can happen, before 35 years have passed.

Both circuits to speak to this aspect of section 203 have recognized that it does not prevent the parties from creating by agreement a license that lasts for less than 35 years. See Walthal, 172 F.3d at 485 (license for 10 years would be terminable at the end of the 10-year period); Rano, 987 F.2d at 585 ("[L]icensing agreements...are terminable at the will of the author only during a five[-]year period beginning at the end of thirty-five years from the date of execution of the license unless they explicitly specify an earlier termination date.") (emphasis added). The House and Senate Reports accompanying the Copyright Act clearly indicate that section 203 was not intended to preclude or affect the duration of licensing agreements made for terms of less than 35 years. See H.R. Rep. No. 94-1476, at 128 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5743 ("Nothing contained in this section or elsewhere in this legislation is intended to extend the duration of any license, transfer or assignment made for a period of less than thirty-five years. If, for example, an agreement provides an earlier termination date or lesser duration, or if it allows the author the right of cancelling or terminating the agreement under certain circumstances, the duration is governed by the agreement."); S. Rep. No. 94-473, at 111 (1975) ("Nothing contained in this section or elsewhere in this legislation is intended to extend any license or transfer made for a period of less than thirty-five years."). In other words, the parties are

10

free to agree to a license that is of definite duration, including one for a period of less than 35 years. That is clear.

The more interesting issue is whether section 203 imposes a 35-year term for a license of indefinite duration that would otherwise be subject to earlier termination under state contract law. In Rano, the Ninth Circuit ruled that section 203 does impose such a term and therefore preempts state law. See Rano, 987 F.2d at 585. The district court in this case adopted that view, and it concluded as a result that Korman could not terminate WQBA's license to use her jingle until 2013, at the earliest. (The 2013 date is 1978, when the license was created, plus 35 years.)[4] In Walthal, which was decided after the district court's decision in this case, the Seventh Circuit disagreed with Rano and held that section 203 does not impose a minimum 35-year term on licenses of indefinite duration and thus does not preempt state law. See Walthal, 172 F.3d at 484-85. After reviewing the text and legislative history of section 203, we agree with the Seventh Circuit.

The first, and most important, step in statutory construction is to examine the language of the provision itself. See, e.g., United States v. Steele, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc). Section 203 does not say that copyright licenses

---

[4]The district court did not discuss Florida law concerning termination of agreements of indefinite duration, apparently because, like the Ninth Circuit in Rano, it reasoned that state law under which a copyright licensing agreement of indefinite duration could be terminated in less than 35 years would be preempted by section 203.

11

of indefinite duration cannot be terminated for 35 years.  What it says, in subsection (a)(3), is: "Termination of the grant may be effected at any time during a period of five years beginning at the end of thirty-five years from the date of execution of the grant."  17 U.S.C. § 203(a)(3).  That is not the same thing as saying termination "may <u>only</u> be effected at any time during a period of five years beginning at the end of thirty-five years . . . ."  The <u>Rano</u> decision reads into the language of the statute the word "only," a word that changes the meaning of the provision, and a word  Congress did not put there.  As we will explain momentarily, we believe the reason Congress did not put the word "only" where the <u>Rano</u> court wrote it in is that doing so alters the meaning of the provision in a way that defeats the congressional intent behind section 203.

Before we get to a discussion of congressional intent, however, it is worth noting that the <u>Rano</u> court's rewriting of section 203 extends beyond insertion of the word  "only."  By recognizing that parties could agree to make a license with a shorter duration, the court essentially interpreted section 203 to impose a 35-year term as a default rule.  <u>See</u> <u>Rano</u>, 987 F.2d at 585.  Under this interpretation, the language of the provision would become (with the words that must be added underscored): "Termination of the grant may <u>only</u> be effected at any time during a period of five years beginning at the end of thirty-five years from the date of

12

execution of the grant <u>unless the parties agree to a specific shorter term.</u>" One alteration begets another. <u>See</u> 3 Melville B. Nimmer & David Nimmer, <u>Nimmer on Copyright</u> § 11.01[B], at 11-9 (1994) ("[H]ad Section 203 been designed, as interpreted by the [<u>Rano</u>] court, to prevent terminations earlier than thirty-five years after execution, then a contrary agreement by the parties would be a nullity, in contrast to the court's conclusion."). It is not the business of courts to rewrite statutes, and our interpretation of section 203 requires no rewriting. We take the provision as Congress wrote it, and neither add words to nor subtract them from it.

Our reading of section 203 furthers, instead of defeats, the manifest congressional intent behind that section -- the protection of authors. Characterizing section 203 as "a provision safeguarding authors against unremunerative transfers," the House Report states that "[a] provision of this sort is needed because of the unequal bargaining position of authors, resulting in part from the impossibility of determining a work's value until it has been exploited." H.R. Rep. No. 94-1476, at 124 (1976), <u>reprinted in</u> 1976 U.S.C.C.A.N. 5659, 5740. The Senate Report contains the same language. <u>See</u> S. Rep. No. 94-473, at 108 (1975).

The Supreme Court has recognized that the purpose of section 203 is to help authors, not publishers or broadcasters or others who benefit from the work of authors. <u>See</u> <u>Mills Music, Inc. v. Snyder</u>, 469 U.S. 153, 172-73 & n.39, 105 S. Ct.

13

638, 649-50 & n.39 (1985) (citing the House Report about section 203 as authority for the proposition that a "comparable termination provision" in a related section of the same legislation was intended "to relieve authors of the consequences of ill-advised and unremunerative grants that had been made before the author had a fair opportunity to appreciate the true value of his work").  The treatises on copyright law agree.  See 3 Nimmer on Copyright § 11.01[B], at 11-6 (1995) ("Section 203 is designed to protect authors and to confer on them an additional opportunity to profit from their works, notwithstanding an antecedent grant to the contrary.");  1 Neil Boorstyn, Boorstyn on Copyright § 8.14, at 8-28 (1999) ("[T]he federal termination provisions were intended to facilitate, not restrict, authors' rights of termination and copyright recapture.").

Giving the other side of the issue its due, we recognize that one provision of section 203 could be read to support the Rano court's conclusion.  Section 203(b)(6) states: "Unless and until termination is effected under this section, the grant, if it does not provide otherwise, continues in effect for the term of copyright provided by this title."  17 U.S.C. § 203(b)(6).  We think, though, that section 203(b)(6) does not provide much support for the holding in Rano, and it certainly does not compel that holding. The reason is that state laws governing contracts of indefinite duration, which are read into a contract, do "provide otherwise" within

14

the meaning of section 203(b)(6). It is a well-established principle that state law is read into and becomes part of a contract. See Norfolk & Western Ry. Co. v. American Train Dispatchers' Ass'n, 499 U.S. 117, 130, 111 S. Ct. 1156, 1164 (1991) ("'Laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as fully as if they had been expressly referred to or incorporated in its terms.'") (quoting Farmers' & Merchants' Bank of Monroe v. Federal Reserve Bank of Richmond, 262 U.S. 649, 660, 43 S. Ct. 651, 655 (1923)); Florida E. Coast Ry. Co. v. CSX Transp., Inc., 42 F.3d 1125, 1129 (7th Cir. 1994) ("[T]he legal framework that existed at the time of a contract's execution must bear on its construction. Contracts are presumed to be written in contemplation of the existing applicable law."); Universal Lite Distribs., Inc. v. Northwest Indus., Inc., 602 F.2d 1173, 1175 (4th Cir. 1979) (looking to state law to allow termination of an indefinite contract upon reasonable notice).

As the Seventh Circuit, in rejecting the Rano decision, explained:

> [A] contract which implicitly provides for termination, as this one does under Illinois law, presents no conflict with § 203. This contract does not differ in any meaningful way from a contract which specifies a term of, for instance, 10 years, which would be terminable at the end of the 10-year period.

Walthal, 172 F.3d at 485. We join the Seventh Circuit in rejecting Rano's conversion of "casual oral permission into a thirty-five year straitjacket." 3

15

Nimmer on Copyright § 11.01[B], at 11-9 (1994). We hold that if state law

provides that licenses of indefinite duration may be terminated in less than 35

years, it is state law and not section 203 that governs the question of termination

before 35 years. We leave it to the district court on remand to determine state law.[5]

### III.  CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment is

REVERSED and this case is REMANDED to the district court for further

proceedings consistent with this opinion.

---

[5] We do not mean to direct the details of how the district court should go about deciding this case on remand, so long as its decision is consistent with this opinion. For example, if the district court determines that Korman's claimed copyright is not valid – a matter about which we express no view – it need not decide any issues of Florida law concerning termination of contracts of indefinite duration.