BRIDGEPORT MUSIC, INC.;
Westbound Records, Inc.,
Plaintiffs–Appellants,

Southfield Music, Inc.; Nine
Records, Inc., Plaintiffs,

v.

SONY MUSIC ENTERTAINMENT,
INC., Defendant–Appellee,

EMI April Music Publishing. Inc.; EMI
Music Publishing, Inc.; My World
Publishing, Inc.; Songwriter Services,
Inc., Defendants.

No. 03–5742.

United States Court of Appeals,
Sixth Circuit.

June 30, 2004.

Richard S. Busch, D'Lesli M. Davis, Jeannine Huber, King & Ballow, Nashville, TN, for Plaintiffs–Appellants.

Timothy L. Warnock, Jay S. Bowen, Amy Jo Everhart, Bowen, Riley, Warnock & Jacobson, Nashville, TN, for Defendant–Appellee.

Before GUY and GILMAN, Circuit Judges; and BARZILAY, Judge.*

RALPH B. GUY, JR., Circuit Judge.

The appeal in this copyright infringement action is from the award of attorney fees and costs in favor of defendant, Sony Music Entertainment, Inc., and against plaintiffs. Bridgeport Music, Inc., and Westbound Records. Inc., jointly and severally. Plaintiffs also appealed from the entry of summary judgment in favor of Sony and EMI April Music, but that sepa-

* The Honorable Judith M. Barzilay. Judge, United States Court of International Trade, sitting by designation.

rate appeal was voluntarily dismissed as a result of a settlement with EMI that required dismissal of claims against Sony as well. The reasonableness of plaintiffs' claims against Sony is nonetheless relevant to our review of the decision awarding $143.503.59 in attorney fees and $8,539.65 in costs under 17 U.S.C. § 505. After review of the record and arguments presented on appeal, we vacate the award and remand for further consideration consistent with this opinion.[1]

## I.

This case arose out of a single complaint filed on May 4, 2001, by four related plaintiffs alleging nearly 500 counts against approximately 800 defendants for copyright infringement and other state law claims. The amended complaint, filed after the district court severed the action into 476 separate cases, alleged that the rap song "2 Da Beat Ch' Yall" sampled without permission both from the composition and sound recording "Funky Worm," and from the composition "The Freeze (Sizzaleanmean)." Bridgeport Music is in the business of owning and exploiting copyrights in musical compositions, while Westbound Records is in the business of recording and distributing sound recordings. We assume, as did the district court, that Bridgeport would be able to establish that it owned the compositions "Funky Worm" and "The Freeze" and that Westbound would be able to establish that it owned the sound recording "Funky Worm."

### A. Background Facts

In 1993, Sony and third-party Ruffhouse Records released the album "Da Bomb" by the recording duo Kris Kross, which included the song "2 Da Beat Ch' Yall." ("2 Da"). The composition "2 Da" was co-owned by EMI, So So Def, and My World Publishing. Before the release of the album, the manager for Kris Kross, ERI, Inc., hired Songwriter Services to get permission to use the sample from "Funky Worm." In letters dated June 1, 1993, Madeline Smith of Songwriter Services notified Bridgeport and Westbound that "2 Da" contained a sample from the musical composition and sound recording "Funky Worm" and stated that it was the only sample in "2 Da." Smith sought permission to use the sample, which she described as a "two bar instrumental riff." and provided plaintiffs with a cassette recording of "2 Da."

Westbound Records issued a master use license to Sony and Ruffhouse Records, effective August 3, 1993, which granted them and their licensees and assignees "the worldwide right in perpetuity" to embody the sound recording sample from "Funky Worm" in the recording "2 Da." Westbound received an advance of $1,200 against royalties to be paid for each sale of "2 Da" containing the sample, but claimed that additional royalties were due because the album had sold approximately 750,000 copies domestically as of November 2001. Westbound attempted to avoid Sony's use of the license as a defense to Westbound's claim of infringement by arguing that the failure to pay the additional royalties invalidated the license, but the district court soundly rejected this argument. Finding Sony had a valid license to use the sample, the district court granted summary judgment to Sony on Westbound's copyright infringement claims.

Jane Peterer, Bridgeport's administrator, responded to Smith's clearance request on June 9, 1993. Peterer indicated that she had "carefully listened to both

---

1. Southfield Music and Nine Records voluntarily dismissed their claims because they owned no copyrights in the allegedly sampled works. Aside from the award of attorney fees and costs in favor of Sony, no other claims or defendants are at issue in this appeal.

songs and [found] that Kris Kross' Recording 'To The Beat Ch Yall' contain[ed] a sample from the Bass Line of 'Funky Worm' as well as the signature synthesizer melody of 'Funky Worm.'" Peterer requested that Bridgeport receive 50% ownership in the composition "2 Da" at the full statutory rate in exchange for permission to use the samples from "Funky Worm." On July 30, 1993, Smith confirmed that the publishers had agreed to Bridgeport's terms and asked that Peterer send formal agreements to the publishers for signature. On August 3, 1993, Peterer sent a Release and Agreement (Bridgeport's co-publishing agreement) to EMI. That agreement was not signed, but the album was released.

The next day, Peterer sent Sony a mechanical license granting permission to use the composition "2 Da" for release on the album "Da Bomb" within the United States, in exchange for payment of royalties at 50% of the statutory rate. Sony paid royalties to Bridgeport, but did not return an executed copy of the license until 1996. In 1998, Sony re-released "2 Da" on a Kris Kross compilation album called "Gonna Make U Jump." In May 1999, at Sony's request, Bridgeport issued a second mechanical license for use of the composition "2 Da" on the new album in exchange for royalties to be paid from the date of its release. Bridgeport received royalty payments from Sony under this license.

Bridgeport's administrator discovered in September 1999 that "2 Da" sampled without permission from "The Freeze," another composition owned by Bridgeport, which had just been re-released on CD. Peterer notified Sony and EMI of the alleged infringement, demanded an additional 25%

ownership in "2 Da," and advised EMI that the original Release and Agreement, which had still not been signed, would have to be revised accordingly. Peterer claims EMI assented, but no agreement was ever executed.[2]

In attempting to avoid the license defense in this case, Bridgeport relied on Smith's representation that "Funky Worm" was the only sample in "2 Da" and on Sony's failure to disclose the sample from "The Freeze" to argue both (1) that the licenses it had granted were fraudulently induced, and (2) that Sony should be estopped from asserting the statute of limitations with respect to claims arising more than three years before the complaint was filed. The district court found there was no evidence that Sony was aware of this additional sample and that Smith's representations were not made on behalf of Sony. In addition, the district court concluded that no fraud could be inferred from the fact that Sony knew of others who had claimed that Kris Kross sampled their works without permission. Finally, the district court found that the first mechanical license, granted by Bridgeport in 1993, was unambiguous and applied to all of Bridgeport's rights in "2 Da," whether the song contained one or more samples from other Bridgeport works.

Bridgeport made similar arguments with respect to the second license, granted for the re-release of "2 Da," but Sony responded that infringement claims relating to the re-release were not alleged in the amended complaint. Bridgeport pressed these claims and included them (over defendants' objections) in the Final Pretrial Order. The district court sided with de-

---

**2.** Plaintiffs' expert states in his affidavit that a four-beat instrumental and vocal sample from "The Freeze," including female voices singing "Can we getcha hot" and a male voice responding "Got me hot," is looped three times

and appears in the song twice. Defendants' statements in the Final Pretrial Order indicate that they intended to argue that use of the sample was *de minimis*.

fendants and found that amendment of the pleadings to conform to plaintiffs' theory on the eve of trial would be "seriously prejudicial" to defendants. Plaintiffs apparently read ambiguity in the court's order, which prompted defendants to seek clarification from the court about whether plaintiffs could pursue such claims at trial.

The district court clarified that the only claim at trial would be that Sony had exceeded the scope of the 1993 license for "2 Da" on "The Bomb" by copying the sound recording and licensing it to foreign affiliates for distribution outside the United States. Rather than trying this claim alone. Bridgeport and Sony agreed to dismissal without prejudice pending resolution of plaintiffs' appeal with respect to the previously dismissed claims. One of the terms of the agreement, as reflected in the written correspondence, was that "Sony [would] not claim to be the 'prevailing party,' for the purpose of seeking attorney fees, by virtue of the voluntary dismissal of the Claim." Final judgment was entered on November 11, 2002, and plaintiffs' appeal followed.

Sony and EMI filed motions for attorney fees and costs in December 2002. After deducting the fees and costs incurred in connection with the claim that was dismissed without prejudice. Sony requested a total of $199.593.07 in attorney fees and $28,014.04 in costs. Before those motions were decided, however, plaintiffs reached a settlement with EMI that required the dismissal of claims against EMI and all licensees of EMI that had a right to indemnification. As a result, plaintiffs voluntarily dismissed their appeal from the order granting summary judgment to both Sony and EMI.[3]

On April 29, 2003, the district court entered its order finding that Sony was a "prevailing party" and that an award of attorney fees against Bridgeport and Westbound was warranted. In calculating the initial lodestar amount, the district court made specific deductions for vague or redacted task descriptions, deducted 10% from the remaining attorney fees for excessive communication between Sony's attorneys due to the large number of associates and law clerks assigned to the matter, and reduced by 15% the remaining paralegal fees for activities of a clerical nature. With these adjustments, the district court found Sony had incurred reasonable attorney fees of $159,448.83. The district court further reduced the attorney fees to $143,503.59, explaining that:

> the overly aggressive practices of both the plaintiffs and the defendants in this case increased the fees expended on both sides. The Court will reduce the lodestar amount by five percent to adjust for excessive motion practice over technical issues, and another five percent for excessive pre-trial motions *in limine* and last-minute discovery. Other than these minor adjustments, the Court finds that the defendants' discovery and motion practice, while extensive and expensive, was necessitated by the manner in which these cases were litigated and the plaintiffs' aggressive prosecution of their claims.

Then, after addressing plaintiffs' specific objections, the district court awarded a total of $8,539.65 in nontaxable costs. Plaintiffs appealed, but do not challenge the district court's calculation of the amounts or the inclusion of any particular item in the award.

---

**3.** Plaintiffs seem to suggest that they thought the "waiver" of prevailing party status would extend beyond Bridgeport's voluntary dismissal of the final claim against Sony, but nothing in the record supports such an interpretation. The correspondence between counsel indicates that plaintiffs asked Sony to abandon its request for attorney fees because it would benefit from the settlement with EMI, but Sony refused.

## II.

The district court may, in its discretion, award reasonable attorney fees and costs to the prevailing party pursuant to 17 U.S.C. § 505.[4] Our review of a decision to grant or deny attorney fees and costs under this provision is for abuse of discretion. *Coles v. Wonder*, 283 F.3d 798, 804 (6th Cir.2002); *Murray Hill Publ'ns v. ABC Communications*, 264 F.3d 622, 639 (6th Cir.2001). A district court abuses its discretion when it relies on clearly erroneous factual findings, improperly applies the law, or uses an erroneous legal standard. *Adcock–Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir.2000).

Discretion to award attorney fees as part of costs under § 505 is to be exercised evenhandedly with respect to prevailing plaintiffs and prevailing defendants and in a manner consistent with the primary purposes of the Copyright Act. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). " 'There is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations we have identified.' " *Id.* at 534, 114 S.Ct. 1023 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436–37, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).[5]

The Court in *Fogerty* approved several nonexclusive factors that may be considered as long as they are "faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner." *Id.* at 534 n. 19, 114 S.Ct. 1023. Those factors include: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* (quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir.1986)).

Sony was, as the district court found, a prevailing party since all but one of the plaintiffs' claims were dismissed with prejudice and the remaining claim was dismissed without prejudice. The district court correctly observed that because the *Fogerty* factors are nonexclusive, not every factor must weigh in favor of the prevailing party and other factors may be considered if consistent with the purposes of the Copyright Act. Concluding that attorney fees and costs should be awarded to Sony, the district court explained:

> The majority of the plaintiffs' case was dismissed as time-barred by the statute of limitations. This is not the only Bridgeport case where plaintiffs' claims were defeated in whole or part by their failure to act promptly to protect their rights. The plaintiffs complained repeatedly that the dilatory practices of the music industry, resulting in license agreements never or belatedly being

---

**4.** "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a *reasonable attorney's fee* to the prevailing party as part of the costs." 17 U.S.C. § 505.

**5.** Those considerations include: the primary objectives of the Copyright Act to "encourage the production of original literary, artistic, and musical expression for the good of the public"; the fact that defendants as well as plaintiffs may hold copyrights and run the "gamut" from large corporations to "starving artists"; the need to encourage defendants to "seek to advance a variety of meritorious copyright defenses ... to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement"; and the fact that "a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright." *Id.* at 524, 527, 114 S.Ct. 1023.

signed and payments never or belatedly being made, allowed the defendants in these cases to abuse the plaintiffs' position as small companies and flagrantly use their copyrighted works without proper compensation. The plaintiffs claim that they did not bring suit in a more timely fashion because these practices "lulled" them into a false sense of security and kept them from enforcing their rights. The Court sees little merit to this argument (and in fact wholly rejected in this case the argument that these practices amounted to legal justification for avoiding the statute of limitations).

If their copyrights are as valuable as the plaintiffs claim, then it behooves them to police their rights and seek legal redress in a timely fashion, especially where their opponents are huge entertainment conglomerates that may not respond to any other pressure than the threat of a suit. The Court will take this opportunity to deter further waste of the Court's resources on stale claims that will never make it to trial and encourage their prompt dismissal in the hundreds of Bridgeport cases that remain before this Court.

The Court also finds that the existence of a valid license between the plaintiffs and Sony made assertion of the dismissed copyright claims objectively unreasonable. A copyright claim is objectively unreasonable if it is unsupported by facts or law. *See Batjac Productions, Inc. v. Goodtimes Home Video Corp.*, 1997 WL 745039, *——, 44 U.S.P.Q.2d 1788, 1997 U.S. Dist. LEXIS 20357. *7 (C.D.Cal. Sept. 26, 1997). The Court finds that the dismissed claim against Sony was objectively unreasonable in that Sony had obtained a license from the plaintiffs for use of their copyrighted work, and, as the Court found in its summary judgment decision, the plaintiffs' claim that the license was in-valid lacked both legal and factual support.

Additionally, the Court finds that the manner in which this action was litigated weighs in favor of an award of fees and costs. The Court notes that the pleadings in the Court's case file amount to twelve volumes and nine expandable files, the majority of which are attributable to the plaintiffs' motion practice. The plaintiffs repeatedly taxed the patience of the Court, from narrowing the margins on their memoranda to circumvent page limits, to filing voluminous pleadings that were long on argument but short on concrete facts or applicable legal authority. The plaintiffs took every opportunity to inundate the Court with paperwork, yet many of these motions were hastily prepared and often lacked sufficient legal or factual support.[1] Most notably, the plaintiffs filed a motion for summary judgment on ownership yet failed to submit certified copies of the registration certificates for the copyrights they claimed to own. When this oversight was pointed out by the Magistrate Judge as being fatal to their summary judgment motion, the plaintiffs, instead of providing the documentation (which could be easily obtained from the U.S. Copyright Office), expended enormous effort in subsequent motion papers trying to convince the Court that the certified copies were unnecessary.[ ]

[1] For example, the plaintiffs filed a twenty-six page motion to compel with 137 pages of exhibits. The Magistrate Judge denied most of the plaintiffs' requests, finding that the defendants had already complied, or, in one instance, that the request "smack[ed] of bad faith" where the plaintiffs were told that responsive documents were available at counsel's office for their review, but failed to do so prior to filing their motion to compel. . . .

The plaintiffs' tactics have contributed to the multiplication of fees by all parties, including the defendant here. This, combined with the determination that Bridgeport's claim was objectively unreasonable, merits an award for fees and costs against Bridgeport.[3]

> [3]The Court recognizes that the defendant's practices at times also obstructed the smooth administration of these cases. For example, the defendant was admonished for failing to adhere to orders of the Magistrate Judge regarding filing declarations and affidavits without original signatures and prohibiting the use of the night depository for any filings responsive to a deadline. . . . The amount of the award [is] to be adjusted accordingly.

(Footnote 2 omitted.)

Plaintiffs challenge the award on several grounds, arguing that it was impermissibly punitive, incorrectly concluded that their claims were objectively unreasonable, and failed to properly consider the impact of the settlement with EMI or the disparity in financial resources between plaintiffs and Sony.

First and foremost, plaintiffs vehemently argue that the substantial award in this case was intended to punish plaintiffs for bringing all of their claims together and to force them to abandon legitimate claims being asserted in the other *Bridgeport* cases. The district court's reference to "hundreds" of other pending *Bridgeport* cases explicitly refers to the court's desire to deter the misuse of judicial resources by encouraging plaintiffs to weed out similarly untimely claims. Because of the common origin of the cases, the demonstrated failure of plaintiffs to sort out stale claims in this case, and the likelihood that similar strategies and theories may be employed in other cases, we find deterrence to be a particularly relevant factor to be considered in the exercise of discretion in this case. Although plaintiffs complain that these comments make them doubt that they are being treated evenhandedly, the concern in *Fogerty* was that courts be evenhanded in their treatment of *prevailing* plaintiffs and *prevailing* defendants.

At the same time, the district court's further criticism of the plaintiffs' litigation tactics emphasized the voluminous nature of the record and the conduct that repeatedly taxed the court's patience without explicitly finding that this conduct weighed in favor of an award of fees because it was relevant to a *Fogerty* factor or otherwise furthered some purpose of the Copyright Act. As our decision in *Murray Hill* suggests, voluminous or burdensome pleadings alone do not justify an award of fees. *Murray Hill*, 264 F.3d at 639–40 (reversing award to prevailing defendant). Litigation tactics may be relevant, however, when the conduct supports an inference concerning motivation or a particular need for deterrence or compensation. *Cf. Coles*. 283 F.3d at 803 (in light of objective unreasonableness of claims, the plaintiff's tactics and strategies could "be interpreted as seeking to force settlement with a wealthy songwriter with little or no basis for doing so."). While such an inference might be justified in this case, the district court did not articulate the connection to the purposes of the Copyright Act or the recognized *Fogerty* factors.[6]

---

**6.** Plaintiffs also complain that Sony was equally responsible for the multiplication of fees in this case. Given the district court's intimate knowledge of the parties' litigation conduct, we cannot say that it was an abuse of discretion for the district court to conclude that Sony's aggressive litigation conduct warranted a 10% reduction in the award as opposed to a denial of fees altogether. Of course, this does not preclude the district court from revisiting the issue on remand.

In *Murray Hill,* this court affirmed the entry of summary judgment in favor of the defendant, but reversed the award of attorney fees to the prevailing defendant because the case presented unsettled questions of law and one or more colorable claims of infringement. *Id.* at 640. This is consistent with the view taken in other circuits that when a plaintiff has advanced a reasonable, yet unsuccessful claim, an award of fees to the prevailing defendant generally would not promote the purposes of the Copyright Act. *Matthew Bender & Co. v. West Publ'g Co.,* 240 F.3d 116, 122 (2d Cir.2001); *Lotus Dev. Corp. v. Borland Int'l, Inc.,* 140 F.3d 70, 75 (1st Cir.1998).

As Sony aptly observes in this case, the bulk of the plaintiffs' claims were dismissed on the ordinary defenses of license and the statute of limitations. The district court specifically found that the existence of a valid license between plaintiffs and Sony made assertion of the dismissed copyright claims objectively unreasonable. On appeal, plaintiffs insist that it was reasonable for them to oppose the license defense on the grounds of fraudulent inducement and material breach. The critical question, or course, is not whether summary judgment was properly granted on the remaining claims but, rather, whether the claims were objectively reasonable.[7]

Fraudulent inducement, asserted by Bridgeport, was based on Smith's representation that "Funky Worm" was the only sample in "2 Da." That representation was made on behalf of Smith's client, the manager for Kris Kross, not Sony. Although there was evidence that Smith kept Sony informed about the clearance process and that Sony knew that others had made claims of unauthorized sampling against Kris Kross, that evidence was not suffi-

cient to support a colorable or objectively reasonable claim that Sony made material misrepresentations of fact, knowing them to be false, for the purpose of inducing Bridgeport to grant the license. *Nelson v. Stahl,* 173 F.Supp.2d 153, 169 (S.D.N.Y. 2001) (elements of fraudulent inducement).

Both plaintiffs argued that the licenses were invalidated by the failure of Sony to pay all the royalties that were due. If a licensee fails to satisfy a *condition* to the license, the rights dependent on satisfaction of the condition will not have been effectively licensed. *Graham v. James,* 144 F.3d 229, 237 (2d Cir.1998). On the other hand, a "material breach of a *covenant* will allow the licensor to rescind the license and hold the licensee liable for infringement for uses of the work thereafter." *Id.* Bridgeport and Westbound each received royalties under the respective licenses and the failure to pay in full might prove a breach of a covenant that would permit rescission. *Jacob Maxwell, Inc. v. Veeck,* 110 F.3d 749, 753–54 (11th Cir. 1997). Rescission, however, does not occur automatically. *Graham,* 144 F.3d at 238–39; *Jacob Maxwell,* 110 F.3d at 753–54. The district court did not abuse its discretion in finding that plaintiffs failed to advance a reasonable claim that Sony failed to satisfy a condition to the licenses that would serve to invalidate them.

In closing, plaintiffs contend that the district court abused its discretion by failing to consider either their willingness to settle or the disparity in size between plaintiffs and Sony. Neither consideration was specifically mentioned by the district court. First, a district court may consider whether, given the relative financial resources of the parties, an award of fees would encourage or discourage the bring-

---

7. While the lone claim that survived summary judgment was certainly an objectively reasonable one, Sony excluded attorney fees in-

curred with respect to that claim from its request.

ing of objectively reasonable claims and defenses. deter infringement, and aid in demarcating the boundaries of copyright law. *Mitek Holdings. Inc. v. Arce Eng'g Co.*, 198 F.3d 840, 842–43 (11th Cir.1999). Differences in financial wealth may be irrelevant when the parties are able to pay for the costs of litigation. *Lotus Dev. Corp.*, 140 F.3d at 75. There was no evidence presented on this point. Instead. Armen Boladian, owner and sole shareholder of Bridgeport, Southfield, Westbound and Nine Records, stated that these corporations had only one employee and were "financially dwarfed when compared to defendants' multi-billion dollar corporations, Sony Music Entertainment and EMI April Music."

Finally, the post-judgment settlement with EMI required plaintiffs to voluntarily dismiss the appeal against Sony and to abandon the one claim that survived summary judgment. While plaintiffs argue that the award in this case would tend to discourage settlements, the settlement in this case was not with Sony and the record indicates that plaintiffs knew the settlement would not encompass Sony's request for attorney fees and costs. In a related vein, however, plaintiffs suggest that Sony's right to indemnification from EMI included the right to recover attorney fees and costs expended in defense of this litigation. To the extent that compensation or the need to encourage the bringing of meritorious claims or defenses is found to weigh in favor of an award in a given case, the fact that the prevailing party may not actually bear the costs of the litigation may be relevant to that determination.

The district court's equitable discretion to award attorney fees as part of costs under § 505 must be exercised in a manner consistent with the purposes of the Copyright Act and in light of the considerations identified by the Court in *Fogerty.* We find that it would be an abuse of discretion to conclude that the plaintiffs' litigation tactics weighed in favor of an award of fees simply because of the voluminous nature of the pleadings or the annoying conduct of counsel. Because the district court's opinion, absent further findings, implies as much, we **VACATE** the award of attorney fees and costs against Bridgeport and Westbound in this case and **REMAND** for further consideration consistent with this opinion.