[PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 22-11516

_____

THE HIGHLAND CONSULTING GROUP, INC.,

Plaintiff-Counter Defendant
Appellee,

*versus*

JESUS FELIX MINJARES SOULE,

Defendant-Claimant
Counter Claimant-Appellant,

TOYOTA MOTOR CREDIT CORPORATION, et al.,

Defendants-Third Party Defendants.

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:19-cv-81636-RLR

_____

Before WILLIAM PRYOR, Chief Judge, and LUCK and HULL, Circuit Judges.

HULL, Circuit Judge:

Plaintiff The Highland Consulting Group, Inc. ("Highland"), a consulting firm, sued defendant Jesus Felix Minjares Soule ("Minjares") for misappropriating its trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b)(1). At trial, the jury returned a verdict for $1.2 million in favor of plaintiff Highland. The district court carefully used a special verdict form on which the jury answered questions and made specific findings on each element of plaintiff Highland's claims.

On appeal, defendant Minjares does not challenge the jury's findings that the documents he took contained trade secrets and that he misappropriated those trade secrets. Instead, Minjares contends that (1) plaintiff Highland failed to prove it was an "owner" of those trade secrets, as required by the DTSA, and (2) the district court erred in denying his motions for judgment as a matter of law, or alternatively for a new trial on this ground.

After careful review of the record, and with the benefit of oral argument, we conclude that plaintiff Highland presented

sufficient evidence to support the jury's finding on the verdict form that plaintiff Highland proved the required ownership by a preponderance of the evidence.  We thus affirm the judgment in favor of plaintiff Highland.

## I.    TRIAL EVIDENCE

### A.    Corporate Structure

At trial, plaintiff's principal witness was James Kerridge, who is the founder and 100% owner of "The Highland Consulting Group, Inc.," the named plaintiff.  For ease of reference, we call the named plaintiff "Highland."

Plaintiff Highland is a national consulting firm composed of senior consultants.  Plaintiff Highland also has established various "local affiliates" in different countries to make sure that it stays in tune with local regulations.  Kerridge is also the 100% owner of The Plaza Group, Inc., which owns 100% of each of these local affiliates.  Kerridge testified that the diagram below "accurately reflect[s]" the corporate structure:



The Highland Group Corporate Structure chart shows Kerridge as the 100% owner of both (1) the named plaintiff and (2) The Plaza Group, Inc. which owns the affiliates.

Defendant Minjares worked as an economic analyst from 2012 to 2019 and signed a "Non-Disclosure, Non-Solicitation[,] and Compliance Agreement" as to the confidential information obtained during his employment.

**B.     Plaintiff's Marketing Name**

During trial, Kerridge testified that plaintiff Highland uses and markets its services under the marketing name of "The Highland Group Consultants." Specifically, Kerridge testified:

> Q:    Okay. Mr. Kerridge, the Plaintiff in this case is the Highland Consulting Group, Inc., is that right? The one who is bringing suit against Mr.

> Minjares, my client, is an entity called the Highland Consulting Group, Inc., correct?
>
> A:    Yes.
>
> Q:    And in opening, your attorney was showing the jury the different participants in this process, and *we don't see the name of the Plaintiff, the Highland Consulting Group, Inc., in this list. Can you explain to me why?*
>
> A:    This is the -- *the Highland Group Consultants is the name that we present to the marketplace.  The name that you are referring to is the legal entity that is bringing suit.*

(Emphases added).  In short, plaintiff "The Highland Consulting Group, Inc.," the legal entity bringing this lawsuit, uses the marketing name "The Highland Group Consultants" to market its services.

## C.    Trade Secret Documents

Plaintiff Highland's marketing name—"The Highland Group Consultants"—appeared on hundreds of pages of trade secret documents that plaintiff Highland introduced and the jury reviewed at trial.  The use of plaintiff Highland's marketing name on these documents evinces that plaintiff Highland owned the trade secrets in the documents.

The trade secret documents in evidence included (1) part of the book called "One Highland," (2) a 285-page document entitled

"Mining Vertical," and (3) the Prospectus. Minjares does not dispute that these particular documents contain trade secrets or that he misappropriated them.

Every single page of the One Highland book in evidence displays the named plaintiff Highland's marketing name and logo:

THE
HIGHLAND
GROUP
CONSULTANTS

In fact, Kerridge and Brian Saville, plaintiff's chief financial officer ("CFO"), both described "The Highland Group Consultants" logo as "the Highland logo."

Kerridge also testified about the development and content of the trade secret documents. Kerridge testified he developed the One Highland book because he was concerned that the firm "would do business . . . differently" in the different parts of the world where it operated. So, Kerridge brought senior people in the firm together in a room to develop guidelines, and this book contained plaintiff Highland's guiding principles at a high level of generality. Kerridge explained that the One Highland book is "the framework for all of our projects."

The Mining Vertical document also contains "The Highland Group Consultants" marketing name and logo at the top of each

page. This document outlines the firm's best practices with respect to mining consulting jobs. It was developed by "a specialized team of [Highland's] senior mining focused practitioners, leaders, and consultants." According to Kerridge, the Mining Vertical document is the "referral document for our mining teams to give them an underpinning of . . . how we do mining projects, [and] . . . our experiences in mining projects."

Most pages of the One Highland book and the Mining Vertical document—watermarked with "The Highland Group Consultants"—also contain "© 2013 The Highland Group" in the bottom left corner. The contents of plaintiff Highland's trade secret documents thus were copyrighted under the name "The Highland Group." This indicates that named plaintiff Highland used its marketing name—"The Highland Group Consultants"— along with, and sometimes interchangeably with, the name "The Highland Group."

Another document Kerridge testified about was the Prospectus, which also refers to both "Highland" and the "Highland Group." The Prospectus "is a set of instructions, algorithms, and outputs" that is used to develop business proposals for clients. Kerridge testified that this financial model was developed so "that we could use [it] consistently across the country and across the world" in preparation of the firm's proposals.

### D.    Plaintiff's Saucito Project

Tellingly too, these trade secrets were used to complete consulting projects of the named plaintiff—and not just its affiliates across the world.

For example, the named plaintiff Highland was a party to a three-week Discovery and Design contract with Fresnillo, PLC ("Fresnillo"), a Mexican mining company, at its Saucito mine site. Saville, plaintiff's CFO, testified that the parties to this agreement were (1) Fresnillo, and (2) "Highland Consulting Group," which is the named plaintiff here.

To obtain the contract, plaintiff Highland prepared a proposal for a three-week Discovery and Design project at Fresnillo's Saucito mine site.    The proposal displayed "The Highland Group Consultants" logo at the top of each page.

Plaintiff Highland also entered into a mutual confidentiality agreement with Fresnillo.  That agreement was signed by Saville, in his capacity as CFO of "The Highland Consulting Group, Inc.," again the named plaintiff here.

On March 5 or 6, 2019, plaintiff Highland began the three-week Discovery and Design project.  Kerridge described Discovery and Design as "our analytical process where . . . [w]e define what the [client's] issues are . . . and put together a program on how to overcome those barriers."  Discovery and Design precedes the implementation phase.    Since plaintiff Highland was the contracting party, the jury could reasonably infer the One Highland

book, the Mining Vertical document, and the Prospectus were used, at least in part, for the Discovery and Design project.

At the end of the Discovery and Design phase, Fresnillo awarded a $2,992,000 contract for the 36-week project phase to HCG Advisors Mexico ("HCG Advisors"), the foreign affiliate in Mexico. Saville, plaintiff Highland's CFO, explained that he used HCG Advisors as the contracting party because he wanted to avoid the "headache[]" of "double taxation" that can arise when the term of a contract is longer than six months. Defendant Minjares was the consultant in charge of the "project phase."

On September 25, 2019, Fresnillo abruptly cancelled the Saucito mine project with no explanation. At this time, approximately $1,200,000 was left on the contract.

The next day, Minjares resigned and accepted a new job at Surge Performance Group ("Surge"), another consulting firm.

Then, on September 30, 2019, Minjares used a corporation owned by his family in Mexico to partner with Surge and complete the Saucito mine project. Minjares had a 20-to-30% ownership interest in his family-owned corporation.

### E.    Minjares Returns Confidential Information

After he resigned, Minjares was asked in October 2019 "to return all company property," but Minjares did not respond.

Yet, after this litigation commenced, Minjares's counsel (in January 2020) returned five USB drives containing 15.4 gigabytes of data, which included the three "principal" trade secret

documents—One Highland, the Mining Vertical document, and the Prospectus.

The USB drives also contained an "Executive Presentation — Nov 2019" slideshow that displayed Surge's logo but had "Highland data" from a presentation "prepared to obtain a sale from the Fresnillo group."

As part of this litigation, plaintiff Highland located another trade secret document that Minjares never returned. This document was a sales presentation entitled "Design" that (1) contained "Highland material" developed for the Saucito mine project, (2) included "references to Highland," and (3) displayed "The Highland Group Consultants" logo on three slides.

## II.    PROCEDURAL HISTORY

### A.    Pre-Trial Proceedings

In 2019, plaintiff Highland filed a civil complaint against defendant Minjares. Highland's complaint began with this sentence: *"Plaintiff, The Highland Consulting Group, Inc. ('Highland'), files this Verified Complaint . . . against Defendant Jesus Felix Minjares Soule ('Minjares')."* (Emphasis added). The complaint alleged three counts against defendant Minjares, including a DTSA trade secret misappropriation claim ("Count 1").[1]

---

[1] We do not address plaintiff's breach-of-contract claims in Counts 2 and 3 because on appeal neither party raises any issues related to these claims. We also note that Minjares filed a counterclaim and the jury found for Minjares on

22-11516               Opinion of the Court               11

After discovery, the parties filed cross-motions for summary judgment, which the district court denied.

**B.    Trial, Verdict, and Renewed Motions**

In 2022, the case proceeded to trial.

After both sides rested, Minjares moved for judgment as a matter of law, arguing that plaintiff Highland had not presented any evidence that it owned the trade secrets and, therefore, plaintiff Highland lacked standing to assert its DTSA claim. The district court denied that motion.

The district court, however, charged the jury that plaintiff Highland was required to prove ownership, as follows:

> To prove that The Highland Consulting Group, Inc. owns Mining Practices processes and methodologies of One Highland, Discovery & Design™ methods, sales presentations with compilations of prior results, pricing formulas, or proprietary Prospectus algorithms, it must prove that [these trade secrets] are The Highland Consulting Group, Inc.'s property.

As to Count 1, the district court's thorough verdict form contained 14 interrogatories for the jury to answer. Relevant here, the first interrogatory expressly asked the jury to answer this question:

---

that counterclaim but did not award him any damages. On appeal, Minjares does not challenge that verdict on his counterclaim.

[D]o you find by a preponderance of the evidence that . . . The Highland Consulting Group, Inc. own[ed] *any* of the Mining Practices processes and methodologies of One Highland, Discovery & Design™ methods, sales presentations with compilations of prior results, pricing formulas, or proprietary Prospectus algorithms . . . ?

(Emphasis added).

Notably, the jury was asked if the plaintiff proved it owned "any" of the trade secrets. The jury answered "Yes" to this first interrogatory. Minjares made no objection to this interrogatory. On Count 1, the jury returned a verdict for plaintiff Highland in the amount of $1,200,000.

Following the verdict, defendant Minjares renewed his motion for judgment as a matter of law and, alternatively, moved for a new trial on Count 1. Minjares's motion reiterated his arguments as to standing and ownership. After plaintiff Highland's response, the district court denied the motion.

Minjares timely appealed.

### III.    DISCUSSION

On appeal, Minjares argues that plaintiff Highland did not prove that it—as opposed to one of its affiliates—was the "owner" of the trade secrets. And so, he also argues, plaintiff Highland even lacked standing to bring this action because it could not show injury-in-fact.

First, we provide an overview of the ownership requirement in the DTSA.  Second, we explain why Minjares's arguments fail.

## A.    The DTSA

The DTSA provides a federal civil cause of action for "[a]n *owner of a trade secret* that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."  18 U.S.C. § 1836(b)(1) (emphasis added).

The statute defines "owner" as "the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed."  *Id.* § 1839(4).

## B.    Minjares's Motion for a Judgment as a Matter of Law

Drawing all reasonable inferences in favor of plaintiff Highland, we conclude that the record contains sufficient evidence to support the jury's finding that plaintiff owned "*any*"—in other words, at least one—of the trade secrets involved here.[2]  Actually, the evidence, in the light most favorable to plaintiff Highland,

---

[2] We review de novo the denial of a motion for judgment as a matter of law. *MidlevelU, Inc. v. ACI Info. Grp.*, 989 F.3d 1205, 1214 (11th Cir. 2021).  "In considering the sufficiency of the evidence that supports the jury's verdict, we review the evidence in the light most favorable to, and with all reasonable inferences drawn in favor of, the nonmoving party."  *Id.* (quotation marks omitted).   "[W]e will reverse only if the facts and inferences point overwhelmingly in favor of the moving party, such that reasonable people could not arrive at a contrary verdict."  *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1312 (11th Cir. 2013) (second alteration adopted).

demonstrated the plaintiff owned multiple trade secrets misappropriated by Minjares.

We start with the trade secret documents themselves. Every page in evidence from the One Highland book and the Mining Vertical document is stamped with "The Highland Group Consultants" logo.

To be sure, the named plaintiff in this case is "The Highland Consulting Group, Inc.," not "The Highland Group Consultants." Owner Kerridge, however, explained that (1) "[T]he Highland Consulting Group, Inc."—the plaintiff in this case—is "the *legal entity* that is bringing suit," but (2) "[T]he Highland Group Consultants is *the name that we present to the marketplace*." (Emphases added). In other words, "The Highland Group Consultants" is a marketing name for "The Highland Consulting Group, Inc." just like "Publix" is the marketing name for "Publix Super Markets, Inc."

Together, this testimony and these documents form an evidentiary basis from which the jury could reasonably have found that the trade secret documents marked with "The Highland Group Consultants" logo were owned by plaintiff The Highland Consulting Group, Inc.

In addition, plaintiff's 100% owner Kerridge testified that he and senior members periodically met in person to develop One Highland and that the One Highland book was designed to serve as a set of guiding principles in order for Highland consultants to do business in a consistent manner around the world. A jury could

reasonably infer and conclude (1) that Kerridge developed the content of One Highland in his role as owner of plaintiff Highland, and (2) that a document created by and meant to be used by Highland consultants around the world would be owned by the plaintiff—"The Highland Consulting Group, Inc."—rather than any single international affiliate.

The record contains similar evidence about the Mining Vertical document. Kerridge testified the document was developed by senior consultants and meant to serve as best practices and a "referral document for [the] mining teams" around the world. Each page of the 285-page Mining Vertical document bears the logo for "The Highland Group Consultants," not any international affiliate. A reasonable jury could conclude it too was owned by plaintiff Highland, not one of the international affiliates.

Plaintiff Highland's evidence about the Saucito mine project also indicated that the plaintiff owned the trade secrets. The contract for the three-week Discovery and Design project at the Saucito mine site was with "The Highland Consulting Group, Inc.," the named plaintiff. During the Discovery and Design phase, plaintiff Highland developed a proposal to address issues at Fresnillo's Saucito mine site. The jury, for example, could have inferred that the "guiding principles" in One Highland and the "best practices" in the Mining Vertical document were used by plaintiff Highland, as the contracting party, because plaintiff Highland developed and owned those trade secrets.

Minjares points out that the trade secrets in the One Highland book and the Mining Vertical document were also used by the foreign affiliates that handled Highland's consulting projects outside the United States. Minjares contends this shows equally that any one of the affiliates could have owned them. However, a reasonable jury readily could have found that plaintiff Highland owned these trade secrets and that its foreign affiliates used them, as Kerridge testified, to achieve conformity so that the firm would do business in the same way across the world. Indeed, the evidence showed that Kerridge as owner of plaintiff Highland developed the trade secrets in order to maintain a cohesive and consistent process in all of its markets, no matter which entity or affiliate conducted the project. The existence of these foreign affiliates, and their use of the trade secret documents to conduct consulting projects, does not undermine plaintiff Highland's claim that it owns the trade secrets.

Minjares also contends that because Highland failed to show it was the owner of the trade secrets, it lacked Article III standing to assert a DTSA claim. The essence of Minjares's contention, however, is whether the *statutory text of the DTSA* "grants [Highland] the cause of action that [it] asserts." *See Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 920 F.3d 704, 708 (11th Cir. 2019) (quotation marks and emphasis omitted). This question is "not of standing at all." *Id.* (cleaned up).

The Supreme Court previously referred to this inquiry as "statutory standing" or "prudential standing." *Lexmark Int'l, Inc. v.*

*Static Control Components, Inc.*, 572 U.S. 118, 128 n.4, 134 S. Ct. 1377, 1387 n.4 (2014). In *Lexmark*, the Supreme Court clarified that these labels are "misleading, since the absence of a valid . . . cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional power to adjudicate the case." *Id.*, 134 S. Ct. at 1387 n.4 (quotation marks omitted). Under *Lexmark*, the question is whether the plaintiff "has a cause of action under the statute." *Id.* at 128, 134 S. Ct. at 1387.

As the Supreme Court has observed, "a statutory cause of action extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked." *Id.* at 129, 134 S. Ct. at 1388 (quotation marks omitted). Because the evidence was sufficient to show that Highland owned the trade secrets, we conclude that (1) Highland's interests fell within the zone of interest protected by the DTSA, and (2) Highland has a cause of action under the DTSA.

## C.    Minjares's Motion for a New Trial

In the alternative, Minjares contends that the district court erred in denying his motion for a new trial because plaintiff Highland failed to establish that it, as opposed to any other entity, "owned any of the Alleged Trade Secrets."[3]  For the reasons

---

[3] We review the denial of a motion for new trial under the abuse of discretion standard. *MidlevelU, Inc.*, 989 F.3d at 1215. "A district court should grant a motion for new trial on evidentiary grounds only when the verdict is against the great, and not merely the greater, weight of the evidence." *Id.* (quotation marks omitted).

discussed above, we conclude that Minjares has failed to show that the jury's verdict as to ownership is against the weight of the evidence.[4]

## IV.   CONCLUSION

We conclude that the trial evidence sufficiently supported the jury's finding that plaintiff Highland owned the trade secrets in issue. Accordingly, we affirm the denials of Minjares's motions for judgment as a matter of law and for a new trial.

**AFFIRMED.**

---

[4] While in the district court, Minjares's motion for a new trial challenged the amount of the jury's verdict as excessive, Minjares's brief on appeal does not raise this issue.